IN THE UNITED STATES DISTRICT
<u>COURT OF THE DISTRICT OF KANSAS</u>

DAVID S. HUTCHINGS, )
              Plaintiff, )
 )
vs. )
 ) Case No.
TONY MATTIVI, )
Director of The Kansas )
Bureau of Investigation, In His )
Individual And Official Capacities )
 )
              Defendant. )
_____ )

## **<u>COMPLAINT</u>**

The plaintiff, David Hutchings, states and alleges the following claims for relief against the defendant, Tony Mattivi.

## **<u>JURISDICTION AND VENUE</u>**

1. This is a civil rights case, based upon and arising under 42 U.S.C. § 1983.

2. This court has subject matter jurisdiction over the plaintiff's federal claims pursuant to 28 U.S.C. § 1331, since these claims arise under federal statutory law. This court has supplemental jurisdiction over the plaintiff's state-law claim pursuant to 28 U.S.C. § 1367, since the state-law claim is so related to the federal claims that they form part of the same case or controversy.

3. All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## **<u>PARTIES</u>**

4. The plaintiff, David Hutchings, is the former Associate Director of the Kansas Bureau of Investigation ("KBI").

5. The defendant, Tony Mattivi, is the current Director of the KBI. Mr. Mattivi is being sued in both his personal or individual capacity, and also in his official capacity.

**FACTUAL ALLEGATIONS**

6. The KBI is an agency of the State of Kansas. The KBI provides investigative, laboratory, and criminal justice information services to criminal justice agencies for the purpose of promoting public safety and preventing crime in Kansas.

7. The KBI is led by the Director of the KBI, who is appointed by the Kansas Attorney General, and who is also subject to confirmation by the Kansas Senate.

8. Except for certain upper-level positions, all agents and employees of the KBI are in the classified service under the Kansas Civil Service Act ("KCSA"), K.S.A. 75-2925 et seq. Specifically, K.S.A. 75-711 states in relevant part:

> The director, associate director, deputy director, assistant directors and any assistant attorneys general assigned to the bureau shall be within the unclassified service. <u>All other agents and employees of the bureau</u> shall be in the classified service under the Kansas Civil Service Act….

9. K.S.A. 75-711 further states the following:

> Any person who was a member of the bureau at the time of appointment as director, associate director, or assistant director, upon expiration of their appointment, <u>shall be returned to</u> an unclassified or <u>regular classified position</u> under the Kansas Civil Service Act with compensation comparable to and not lower than compensation being received at the time of appointment to the unclassified service.

10. In November of 1990, the plaintiff, David Hutchings, was hired by the KBI to serve as a Special Agent I. After serving a probationary period pursuant to K.S.A. 75-2946, Mr. Hutchings became a permanent classified employee as a Special Agent I.

11. In February of 2008, Mr. Hutchings was promoted by the KBI to serve as Special Agent in Charge ("SAC"). After serving a probationary period pursuant to K.S.A. 75-2946, Mr. Hutchings became a permanent classified employee as a SAC.

12. In September of 2011, Mr. Hutchings was promoted by the KBI to serve as the Associate Director. In accordance with K.S.A. 75-711, Mr. Hutchings was an unclassified employee as the Associate Director of the KBI.

13. In December of 2022, the defendant, Toni Mattivi, was appointed as the Director of the KBI. On February 9, 2023, Mr. Mattivi's appointment as the Director was confirmed by the Kansas Senate.

14. On June 23, 2023, Mr. Hutchings met with Mr. Mattivi. During this meeting, Mr. Mattivi stated that he wanted Mr. Hutchings to step down as the Associate Director of the KBI. Mr. Hutchings asked if Mr. Mattivi had another position within the KBI for Mr. Hutchings. Mr. Mattivi replied that it was his preference that Mr. Hutchings leave the agency.

15. Also during the meeting on June 23, 2023, Mr. Mattivi informed Mr. Hutchings that he was appointing Robert Jacobs as the new Associate Director. Mr. Mattivi further informed Mr. Hutchings that he wanted Mr. Hutchings to work with Mr. Jacobs for two weeks to transition Mr. Jacobs to the role of Associate Director.

16. Also during the meeting on June 23, 2023, Mr. Mattivi informed Mr. Hutchings that after he had worked with Mr. Jacobs for two weeks, Mr. Hutchings would be placed

on administrative leave for a period of time to be worked out with the KBI's Human Resources Director. Mary McAferty is the KBI's Human Resources Director. Mr. Mattivi then asked Mr. Hutchings how Mr. Hutchings wanted to present the message that he was leaving the KBI. Mr. Hutchings replied that it was Mr. Mattivi's message to deliver, since he was terminating Mr. Hutchings' employment with the KBI. At no time during the meeting on June 23 did Mr. Hutchings tell Mr. Mattivi that he was resigning or retiring from the KBI.

17. On June 26, 2023, Mr. Mattivi sent an email to all employees of the KBI, stating in relevant part:

> Last Friday, I asked Dave Hutchings to step down from the role of the Associate Director (ASD). Dave has been a valuable member of our agency for over 32 years. I am grateful for his commitment to law enforcement in general and to our organization in particular. He has had a distinguished career and has made significant contributions to the KBI and the citizens of Kansas….Nevertheless, in order to move our agency forward, I believe I need an Associate Director who is more aligned with my goals and objectives, and with my vision and values.

18. On June 29, 2023, Julie Kampsen, an employee in the Human Resources Office of the KBI, sent a letter to Mr. Hutchings. This letter stated in relevant part:

> I hereby accept your retirement as Associate Director with the Kansas Bureau of Investigation effective at 05:00 PM on July 31, 2023. I acknowledge your intent to retire from the State of Kansas effective August 1, 2023.

At no time did Mr. Hutchings tell Ms. Kampsen or Ms. McAferty that he was resigning or retiring from the KBI.

19. On July 3, 2023, during the morning, Mr. Hutchings sent an email to Mr. Mattivi. The first paragraph of this email stated the following:

> As you are aware, it is not my choice to leave employment with the KBI. On Friday June 23, 2023 you informed me that you were asking me to step down from my position as Associate Director. I asked if there was another position for me and you said it was your preference for me to leave the KBI. This left me with the difficult decision of retirement, given that I would no longer be employed. As you are also aware, your decision to terminate me has significant financial implications for me given that I am in the DROP with nearly two years left in that program. Additionally, my wife would need to pay for my health insurance for a period of time almost two years before my planned retirement.

Emphasis added. This email then went on to quote the relevant provisions of K.S.A.75-711. (See paragraphs 8 and 9 above). This email concluded with the following statement:

> I would like to discuss options with you, particularly as you have said that it is your preference that I leave the KBI and it would clearly be difficult to work in an environment where I am not wanted. I would be happy to meet without representation if you believe it can be productive.

20. Later on July 3, 2023, Mr. Hutchings met with Mr. Mattivi. During this meeting, Mr. Mattivi said that he had read the email from Mr. Hutchings, and that Mr. Mattivi was under the impression that Mr. Hutchings had functionally retired upon going into the DROP program. Mr. Hutchings replied that he was still an employee under that statute (K.S.A.75-711). Mr. Hutchings then left to handle some KBI business.

5

21. On July 5, 2023, Mr. Hutchings was summoned to a meeting with Mr. Mattivi. During this meeting, Mr. Mattivi told Mr. Hutchings that he had given Mr. Hutchings a means for a graceful departure, and that he was disappointed in Mr. Hutchings because he believed that Mr. Hutchings was seeking a settlement. Mr. Hutchings replied that he was just wanting to have a conversation with Mr. Mattivi about options. Mr. Mattivi then said that he was immediately placing Mr. Hutchings on administrative leave, and that Mr. Hutchings would be given a ride home by the KBI's Assistant Director, Kelly Ralston.

22. On July 31, 2023, Mr. Hutchings' administrative leave ended, and his employment with the KBI was terminated. At no time did Mr. Hutchings ever tell Mr. Mattivi that he was resigning or retiring from the KBI.

## COUNT I: VIOLATION OF MR. HUTCHINGS' CONSTITUTIONAL RIGHT OF DUE PROCESS BY MR. MATTIVI IN HIS OFFICIAL CAPACITY

23. Paragraphs 1-22 above are incorporated into Count 1 by reference.

24. The Fourteenth Amendment to the United States Constitution prohibits the State of Kansas from depriving Mr. Hutchings of a property interest without due process of law. Mr. Hutchings' constitutional right of due process is further protected by 42 U.S.C. § 1983.

25. The KCSA, through its many procedural and substantive protections, grants permanent classified employees the right of continued employment absent any valid cause for termination.

26. Mr. Hutchings had a protected property interest in his continued employment with the KBI, pursuant to the KCSA and K.S.A. 75-711. Specifically, under K.S.A.75-711, when Mr. Hutchings' appointment as the Associate Director expired, he was entitled to be

returned to a permanent classified position in the KBI. As a classified employee with permanent status, Mr. Hutchings could not be terminated from his position without just cause, pursuant to K.S.A.75-2949d.

27. Mr. Mattivi, acting in his official capacity and under color of state law, caused Mr. Hutchings to be deprived of a property interest without due process of law by (a) failing to return Mr. Hutchings to a permanent classified position in the KBI, after Mr. Hutchings' appointment as the Associate Director had expired; and (b) terminating Mr. Hutchings' employment with the KBI without just cause, and without affording Mr. Hutchings an adequate pretermination hearing.

28. Reinstatement of employment is a form of prospective equitable relief which is available under 42 U.S.C.§ 1983.

Wherefore, pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, Mr. Hutchings prays for judgment in the form of prospective equitable relief against Mr. Mattivi, in his official capacity, enjoining him to reinstate Mr. Hutchings to a permanent classified position in the KBI. In addition, pursuant to 42 U.S.C. § 1983, Mr. Hutchings further requests an order awarding him reasonable attorney fees, and the costs of this action.

**COUNT II: VIOLATION OF
MR. HUTCHINGS' CONSTITUTIONAL
RIGHT OF DUE PROCESS BY
<u>MR. MATTIVI IN HIS INDIVIDUAL CAPACITY</u>**

29. Paragraphs 1-28 above are incorporated into Count II by reference.

30. Mr. Mattivi, acting in his individual capacity and under the color of state law, caused Mr. Hutchings to be deprived of a property interest without due process of law by (a) failing to return Mr. Hutchings to a permanent classified position in the KBI, after Mr.

Hutchings' appointment as the Associate Director had expired; and (b) terminating Mr. Hutchings' employment with the KBI without just cause, and without affording Mr. Hutchings an adequate pretermination hearing.

31. As a result of Mr. Mattivi's deprivation of Mr. Hutchings' property interest without due process of law, Mr. Hutchings has sustained damages in the form of past and future compensation (including benefits), emotional distress, mental anguish, and loss of enjoyment of life.

32. In depriving Mr. Hutchings of a property interest without due process of law, Mr. Mattivi acted with reckless indifference to the federally protected rights of Mr. Hutchings. Therefore, Mr. Mattivi is liable for punitive damages.

Wherefore, pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, Mr. Hutchings prays for judgment against Mr. Mattivi, in his individual capacity, for damages in excess of $500,000.00, consisting of past and future compensation (including benefits), emotional distress, mental anguish, and loss of enjoyment of life, plus punitive damages, attorney fees, litigation costs, and prejudgment interest.

### COUNT III: TORTIOUS INTERFERENCE WITH MR. HUTCHINGS' PROSPECTIVE BUSINESS RELATIONS BY MR. MATTIVI

33. Paragraphs 1-32 are incorporated into Count III by reference.

34. The Kansas Tort Claims Act ("KTCA"), et seq., imposes liability on any Kansas governmental employee under circumstances where the governmental employee, if a private person, would be liable under Kansas law. Under Kansas common law, a private person is liable for tortious interference with prospective business relations.

35. Mr. Hutchings had a prospective business relation with the KBI with the probability of future economic benefit to Mr. Hutchings. Specifically, after the expiration of Mr. Hutchings' appointment as the Associate Director, the provisions of K.S.A. 75-711 unequivocally commanded his return to a permanent classified position with the KBI.

36. Mr. Mattivi had knowledge of Mr. Hutchings prospective business relations with the KBI.

37. Except for Mr. Mattivi's conduct, Mr. Hutchings was reasonably certain to have realized his prospective business relations with the KBI.

38. Mr. Mattivi's conduct was reckless, and outside the scope of his authority. Specifically, contrary to the provisions of K.S.A. 75-711, Mr. Mattivi failed to return Mr. Hutchings to a permanent classified position in the KBI, after Mr. Hutchings' appointment as the Associate Director had expired. In addition, contrary to the provisions of the KCSA, Mr. Mattivi terminated Mr. Hutchings' employment with the KBI without just cause, and he further failed to afford Mr. Hutchings a hearing before the Kansas Civil Service Board.

39. As a result of Mr. Mattivi's wrongful conduct, Mr. Hutchings has sustained damages in the form of past and future compensation (including benefits), emotional distress, mental anguish, and loss of enjoyment of life. In addition, because Mr. Mattivi acted recklessly, he is also liable for punitive damages.

Wherefore, pursuant to the KTCA, Mr. Hutchings prays for judgment against Mr. Mattivi, in his personal capacity, for damages in the amount of $500,000.00, consisting of past and future compensation (including benefits), emotional distress, mental anguish, and loss of enjoyment of life, plus punitive damages and prejudgment interest.

**DESIGNATION OF PLACE OF TRIAL**

The plaintiff requests that Topeka, Kansas, be designated as the place of trial in the above-captioned matter.

**REQUEST FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

Respectfully submitted,

/s/ Alan V. Johnson
Alan V. Johnson, KS #9992
Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C.
534 S. Kansas Ave, Suite 1000
Topeka, Kansas 66603
Telephone   (785) 357-6311
Fax   (785) 357-0152
ajohnson@sloanlawfirm.com