IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID S. HUTCHINGS,

                Plaintiff,

v.

TONY MATTIVI,

                Defendant.

Case No. 24-4080-DDC

**MEMORANDUM AND ORDER**

    Kansas law provides employment protections for specified employees of the Kansas Bureau of Investigation (KBI) under Kan. Stat. Ann. § 75-711. This case asks the court to decide § 75-711's reach. Specifically, it asks whether terminating a KBI Associate Director triggers § 75-711(c)'s statutory protections. The court concludes it does.

    Plaintiff David S. Hutchings worked as the KBI Associate Director until defendant Tony Mattivi, KBI Director, asked plaintiff to step down so defendant could appoint a new Associate Director. Plaintiff alleges that he inquired about securing another position within the KBI. But defendant preferred that plaintiff leave the agency. Plaintiff contends that § 75-11(c) entitled him to return to his previous position in the KBI, instead of leaving the agency. And—by foreclosing that return—plaintiff claims that defendant violated his due process rights and tortiously interfered with his prospective business relations.

    Defendant filed a Motion to Dismiss (Doc. 6). He argues that the statutory language triggers an Associate Director's right to return only on "expiration"—not "termination"—of the

appointment. And here, defendant terminated plaintiff. Plaintiff's appointment thus didn't expire so as to fall under § 75-711(c)'s employment protections, defendant asserts. The court denies defendant's motion. It concludes that the plain language of the statute doesn't support defendant's argument.

I.     **Background**

The court recites the following background facts from the Complaint. The court accepts the Complaint's facts as true, and views them in the light most favorable to plaintiff—the party opposing the Motion to Dismiss. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining on a motion to dismiss the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)).

*Plaintiff's Employment*

Plaintiff began working for the KBI as a Special Agent I in November 1990. Doc. 1 at 3 (Compl. ¶ 10). After completing a probationary period, plaintiff became a permanent classified employee as a Special Agent I. *Id.* The KBI promoted plaintiff to Special Agent in Charge (SAC) in February 2008. *Id.* (Compl. ¶ 11). He again completed a probationary period and became a permanent, classified employee as an SAC. *Id.* Then, in September 2011, the KBI promoted plaintiff to serve as the bureau's Associate Director, making him an unclassified employee. *Id.* (Compl. ¶ 12).

*Plaintiff's Termination*

In June 2023, defendant asked plaintiff to step down from the Associate Director role. *Id.* (Compl. ¶ 14). Defendant—confirmed as KBI Director earlier in 2023—intended to appoint a new Associate Director. *Id.* (Compl. ¶¶ 13, 15). In response to defendant's step-down request,

plaintiff inquired about assuming another position in the KBI. *Id.* (Compl. ¶ 14). Defendant informed plaintiff that he'd prefer for plaintiff to leave the agency. *Id.*

On June 29, 2023, plaintiff received a letter from KBI's human resources office purporting to accept his "retirement as Associate Director" of the KBI "effective August 1, 2023." *Id.* at 4 (Compl. ¶ 18). Plaintiff never told defendant or anyone from human resources that he was resigning or retiring from the KBI. *Id.* at 4, 6 (Compl. ¶¶ 16, 18, 22). On July 3, 2023, plaintiff sent an email to defendant clarifying that it was "not [his] choice to leave employment with the KBI" and asking to "discuss options[.]" *Id.* at 5 (Compl. ¶ 19). Two days later, defendant placed plaintiff on immediate administrative leave. *Id.* at 6 (Compl. ¶ 21). On July 31, 2023, plaintiff's administrative leave ended and the KBI terminated his employment. *Id.* (Compl. ¶ 22).

## II.     Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move to dismiss an action for failing "to state a claim upon which relief can be granted[.]" For a complaint to survive a Rule 12(b)(6) motion, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "If, in the end, a plaintiff's 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint fails to state a claim." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 679).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**III.    Analysis**

Plaintiff brings three claims against defendant—two due process claims and one tortious interference claim. Doc. 1 at 6–9. Defendant contends that all three claims fail as a matter of law because the KBI terminated plaintiff's employment, which means that his term didn't expire so nothing triggered the employment protections provided by § 75-711(c). As relevant here, § 75-711(c) provides that any "person who was a member of the bureau at the time of appointment as . . . associate director . . . upon the expiration of their appointment, shall be returned to an unclassified or regular classified position[.]" The legislature's use of the word "expiration" provides the fulcrum of this case.

Before addressing the merits of defendant's argument, the court outlines the governing law for each of plaintiff's three claims and explains how each one interacts with defendant's argument. Then, the court considers whether termination can trigger § 75-711(c)'s return-to-position requirements under the statute's plain language.

**A.    Due Process Claims**

Plaintiff brings § 1983 claims against defendant, in his individual and official capacities, claiming that defendant violated plaintiff's due process rights. Doc. 1 at 6–8 (Compl. ¶¶ 23–32). Our Circuit has explained that "'[p]rocedural due process imposes constraints on

4

governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment.'" *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). "Whether the right to due process was violated is a mixed question of law and fact." *Manlove v. Tansy*, 981 F.2d 473, 476 (10th Cir. 1992). A procedural due process claim requires a two-step inquiry: (1) "whether the plaintiff had a constitutionally protected interest[,]" and (2) "whether the process afforded was adequate to protect that interest." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 (10th Cir. 2013) (citation omitted). Only the first step is at issue here.

The first requirement—existence of a constitutionally protected property interest—"does not arise from the Due Process Clause itself[.]" *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172–73 (10th Cir. 2016) (citation omitted). Instead, protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) ("The question whether a plaintiff had a protected property interest is determined by state law." (citing *Casias v. City of Raton*, 738 F.2d 392, 394 (10th Cir. 1984))). Thus, for "purposes of the Fourteenth Amendment's Due Process Clause, property interests must derive from some independent source, such as state law, contract, or other understandings that give rise to a claim of entitlement." *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1232 (10th Cir. 2014) (citing *Roth*, 408 U.S. at 577).

"When a plaintiff claims a property interest in [his] job," the court must determine whether plaintiff "had 'a legitimate expectation of continued employment,' as defined by some

5

independent source such as a contract for a fixed term or state law." *Id.* (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)); *see also McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) ("A public employee has a property interest in his continued employment where 'state or local law creates a sufficient expectancy of continued employment.'" (quoting *Driggins v. City of Okla. City*, 954 F.2d 1511, 1513 (10th Cir. 1992))). Thus, "[s]tate law determines whether a claim of entitlement to employment is sufficient." *McDonald*, 769 F.3d at 1210 (citing *Driggins*, 954 F.2d at 1513).

Here, plaintiff served as KBI Associate Director. Kan. Stat. Ann. § 75-711(b) provides that the "associate director . . . shall be within the unclassified service under the Kansas civil service act." And unclassified employees lack a property interest in their at-will positions. *Stoldt v. City of Toronto*, 678 P.2d 153, 160 (Kan. 1984) (explaining that when public employment is at will, the employee lacks a constitutionally protected property interest). So, at first blush, it seems plaintiff lacks a "'sufficient expectancy of continued employment'" to undergird a due process claim. *McDonald*, 769 F.3d at 1210 (quoting *Driggins*, 954 F.2d at 1513).

But Kansas law also provides that "upon the expiration of their appointment," a person who was a member of the KBI when appointed Associate Director "shall be returned to an unclassified or regular classified position under the Kansas civil service act[.]" § 75-711(c). Plaintiff here served as a permanent classified employee before the KBI appointed him Associate Director. *See* Doc. 1 at 3 (Compl. ¶¶ 11–12 ) (alleging that plaintiff was "a permanent classified employee as a SAC" at the time of his Associate Director appointment). And the Kansas Civil Service Act (KCSA) affords employment protections for classified service employees, such as requiring valid cause to dismiss, demote, or suspend. *Bruce v. Kelly*, 514 P.3d 1007, 1013 (Kan.

2022). The KCSA also provides various procedural safeguards for classified employees—such as prior notice, written statements of reason, and opportunities to respond and contest the decision. *Id.* In short, "the KCSA grants classified employees the right of continued employment in the absence of a valid cause for termination." *Id.* at 1014 (quotation cleaned up). "And that right is a property interest that may not be impaired without due process of law." *Id.*

The first step in the due process inquiry—plaintiff's property interest in his job—thus turns on whether plaintiff's termination constituted "the expiration of [his] appointment[.]" § 75-711(c). If so, then his termination as Associate Director triggered § 75-711(c)'s requirement to return plaintiff to "an unclassified or regular classified position under the" KCSA. Conversely, if terminating plaintiff's appointment as Associate Director doesn't qualify as an expiration of that appointment, then plaintiff—as an unclassified employee—had no "'legitimate expectation of continued employment'" under Kansas law. *Eisenhour*, 744 F.3d at 1232 (quoting *Hennigh*, 155 F.3d at 1253).

Before the court addresses this expiration-versus-termination argument, it outlines the law governing plaintiff's other claim: tortious interference with prospective business relations. The court takes this approach because defendant's Motion to Dismiss relies on this same expiration-versus-termination argument for both types of claims. *See* Doc. 7 at 7 ("Plaintiff did not have a protected property interest in his continued employment with the KBI to support his claims under 42 U.S.C. § 1983 and common law." (quotation cleaned up)).

**B.     Tortious Interference with Prospective Business Relations**

To state a claim for tortious interference under Kansas law, a plaintiff must allege:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the

>expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.

*Smith v. Williams*, No. 23-3227, 2024 WL 5153996, at *4 (10th Cir. Dec. 18, 2024) (first citing *Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986); and then citing *Brown v. Univ. of Kan.*, 16 F. Supp. 3d 1275, 1291 (D. Kan. 2014), *aff'd*, 599 F. App'x 833 (10th Cir. 2015)). "Kansas law requires that plaintiffs asserting tortious interference claims prove that they were 'reasonably certain' to have realized a business expectancy but for defendant's conduct." *Id.* at *4 n.3 (quoting *Turner*, 722 P.2d at 1115).

Here, plaintiff hangs the third element—the reasonable certainty of his business expectancy—on the statutory protections provided in § 75-711(c). Doc. 1 at 9 ("Mr. Hutchings had a prospective business relation with the KBI with the probability of future economic benefit to Mr. Hutchings. Specifically, after the expiration of Mr. Hutchings' appointment as the Associate Director, the provisions of K.S.A. 75-711 unequivocally commanded his return to a permanent classified position with the KBI."). So, as with his due process claims, plaintiff's tortious interference claim turns on whether plaintiff's termination as Associate Director triggered the statutory requirement of return. If the term "expiration" encompasses his termination, the statute required that he "return[] to an unclassified or regular classified position[.]" § 75-711(c). Conversely, if the term "expiration" doesn't include termination, he had no business expectancy.

In short, whether plaintiff's due process and tortious interference claims survive depend on the answer to the same question: Did plaintiff's termination of his appointment qualify as the "expiration of [his] appointment"? *Id.*

C.     **Expiration Versus Termination**

To answer that question, the court must predict how Kansas courts would interpret the key statutory phrase: "expiration of . . . appointment." *Id.* The Tenth Circuit has clarified that federal courts "interpret state laws according to state rules of statutory construction." *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1190 (10th Cir. 2000). The Kansas Supreme Court recently explained where to start when interpreting a Kansas statute.

> The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words.

*Bruce*, 514 P.3d at 1012 (citation omitted). Indeed, the Kansas Supreme Court has insisted that "[r]eliance on the plain and unambiguous language of a statute is the best and only safe rule for determining the intent of the creators of a written law." *Landrum v. Goering*, 397 P.3d 1181, 1189 (Kan. 2017) (quotation cleaned up); *see also id.* at 1188 (warning of "the danger of trying to discern legislative intent from means other than the plain language of a particular statute" including by "looking to other, related statutes"). So, the court homes in on the statute's plain language. To elucidate ordinary words' plain meaning, the Kansas Supreme Court consults dictionary definitions. *See Bruce*, 514 P.3d at 1027 (citing *Midwest Crane & Rigging, LLC v. Kan. Corp. Comm'n*, 397 P.3d 1205 (Kan. 2017) for the proposition that "dictionary definitions are a good source for the ordinary meaning of words").

Here, the parties dispute whether the definitions of "expiration" and "termination" differ meaningfully. Relying on definitions from Black's Law Dictionary, defendant distinguishes the terms. Doc. 7 at 9. Expiration involves time elapsing, he argues. Termination doesn't. *Id.* And

9

termination, he argues, requires affirmative action. Expiration doesn't. *Id.* Plaintiff, on the other hand, asserts that the "dictionary definition of 'expiration' includes 'termination.'" Doc. 12 at 4. While each side's view holds some appeal, the court concludes plaintiff has the better of the argument.

To be sure, the definition of expiration involves—in part—the element of time. *See Expiration*, Black's Law Dictionary (12th ed. 2024) (defining expiration as the "ending of a fixed period of time"). And the definition of termination involves—in part—affirmative action. *See Termination*, Black's Law Dictionary (12th ed. 2024) (defining termination as the "act of ending something"). But neither definition stops there. And when the court accounts for the terms' more complete definitions, defendant's time-based and affirmative-action-based distinctions evaporate. Consider these more complete definitions.

- <u>Expiration</u>: "The ending of a fixed period of time; esp., a formal termination on a closing date[.]" *Expiration*, Black's Law Dictionary (12th ed. 2024).

- <u>Termination</u>: "1. The act of ending something; extinguishment . . . . 2. The end of something in time or existence; conclusion or discontinuance[.]" *Termination*, Black's Law Dictionary (12th ed. 2024).

Notice the overlap. The definition of expiration itself employs the word "termination." Meanwhile, termination's full definition likewise blurs the line between the two words. Specifically, termination's more complete definition suggests that a termination doesn't always require affirmative action. It can refer simply to an end. What's more, termination also may incorporate an element of time—*i.e.* "the end of something *in time*[.]" *Id.* (emphasis added). Defendant's attempt to distinguish the definitions based on time and affirmative action thus falls short.

And, as plaintiff notes, other dictionary definitions also suggest a blurred boundary between the two terms. *See* Doc. 12 at 4. Merriam-Webster Dictionary defines "expiration" using the word "termination"—"the fact of coming to an end or the point at which something ends: termination." *Expiration*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/expiration (last visited August 29, 2025). So does the American Heritage Dictionary: "The act of coming to a close; termination[.]" *Expiration*, The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=expiration (last visited August 29, 2025). In sum, the word "expiration"—by its ordinary definition—can encompass termination, and vice-versa. *See Hamden v. Total Car Franchising Corp.*, 548 F. App'x 842, 847 (4th Cir. 2013) ("This [Black's Law Dictionary] definition clearly suggests that expiration is reasonably viewed as a form of termination, rather than a distinctly different event altogether."); *id.* ("In the lexicological sense, termination would include expiration[.]").

In Kansas courts, "ordinary words are to be given their ordinary meaning[.]" *Boatright v. Kan. Racing Comm'n*, 834 P.2d 368, 373 (Kan. 1992) (quotation cleaned up). What's more, "courts are not justified in disregarding the unambiguous meaning." *Id.* (quotation cleaned up). The court thus can't "read out what, as a matter of ordinary language, is in" a statute. *Id.* (quotation cleaned up). Defendant's Motion to Dismiss (Doc. 6) relies solely on cherry picking favorable parts of dictionary definitions to distinguish "expiration" from "termination"—a distinction the words' ordinary meanings don't support. His motion to dismiss thus fails.

Trying to avoid this outcome, defendant urges the court to compare the statutory language in § 75-711(c)—the KBI statute—with the language in Kan. Stat. Ann. § 74-2113(a)(2)—a provision contemplating similar employment protections for appointed positions in the Kansas Highway Patrol (KHP). Doc. 7 at 11. Recall that the KBI statute provides that

11

when an employee—like plaintiff here—"was a member of the bureau at the time of appointment as . . . associate director . . . upon the expiration of their appointment, shall be returned to an unclassified or regular classified position[.]" § 75-711(c). The KHP statute, in contrast, provides that an employee appointed to certain unclassified KHP positions may return to their previous position "upon the termination of the term" in that unclassified position. § 74-2113(a)(2).

The statutory provisions are, indeed, similar. And defendant makes much of the legislature's use of "expiration" in the KBI statute and "termination" in the KHP statute. Doc. 7 at 11. He suggests the court should assume that the legislature's use of different words shows it intended different meanings. *Id.* ("'[T]he legislature intended a different meaning when it used different language in the same connection in different parts of a statute.'" (quoting *Boatright*, 834 P.2d at 373)). And, he notes, the two statutes both were amended just last year, but the legislature nonetheless retained the disparate terms. *Id.* at 11–12.

But, as defendant acknowledges, the KBI and KHP statutes "are two different statutes, and not parts of the same act[.]" *Id.* at 12. And all the case law defendant cites to support his intended-different-meanings argument contemplates words contained in the *same* statute—not different ones. *See id.* at 11 ("The U.S. Supreme Court has noted that 'when the legislature uses certain language *in one part of the statute* and different language in another, the court assumes different meanings were intended.'" (emphasis added) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004))); *id.* ("'It is the court's responsibility, as far as practicable, to reconcile different provisions *within an act* to make them consistent, harmonious, and sensible.'" (emphasis added) (quotation cleaned up) (quoting *Boatright*, 834 P.2d at 373)); *id.* ("'[T]he legislature intended a different meaning when it used different language in the same connection

*in different parts of a statute.*'" (emphasis added) (quoting *Boatright*, 834 P.2d at 373)). And other courts explicitly have confined the intended-meaning presumption to words within the same statute. *See S.A. Winery, Inc. v. Jiaxing Micarose Trade Co*., 53 F.4th 1136, 1143 (9th Cir. 2022) ("Although the use of different language in separate provisions of the *same* statute can indicate that the provisions have different meanings, this presumption 'can hardly be said to apply across the whole corpus juris.'" (emphasis in original) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law*, 170–72 (2012))); *Commonwealth v. Tinsley*, 167 N.E.3d 861, 870 (Mass. 2021) ("[C]anon that different terms are presumed to have different meanings applies to terms used in <u>same</u> statute[.]" (emphasis in original) (citing *Commonwealth v. Williamson*, 971 N.E.2d 250 (Mass. 2012))); *id.* ("The use of slightly different terms in multiple statutes does not create a presumption of different meanings.").

And this limitation makes sense. Presuming the legislature intended different meanings requires assuming the legislature made a deliberate choice to use different terms in the two acts. *See First Presbyterian Church of Lawrence v. City of Lawrence*, 525 P.3d 1175, 2023 WL 2621133, at *11 (Kan. Ct. App. Mar. 24, 2023) (Atcheson, J., dissenting) ("'The normal presumption is that the employment of different words within the same statutory scheme is deliberate, so the terms ordinarily should be given differing meanings.'" (quoting *Jane Doe No. 1 v. Backpage.com*, 817 F.3d 12, 23 (1st Cir. 2016))). But when it compares words from two separate statutes, there's no basis to assume that the legislature deliberately chose different words. That is, the legislature necessarily considers disparate words side-by-side when crafting provisions of the same statute. But the same doesn't hold true for separate statutes. There's just no reason to assume the legislature compared two disparate terms side-by-side and deliberately

13

chose one over the other.  Defendant's intended-different-meanings argument doesn't persuade the court.

Defendant tries one final tack.  He argues that the KBI and KHP statutes address a similar topic: "how to handle the employment of individuals appointed to high-level law enforcement positions at the state level."  Doc. 7 at 12.  And, because the topics are similar, the use of "termination" in the KHP statute and "expiration" in the similar KBI statute demonstrates the legislature deliberately distinguished between the available protections.  But he cites no authority to support the proposition that similar topics—alone—are a sufficient basis on which to compare statutes and thereby draw conclusions about the legislature's intention.  *See id.* at 11–12.  Indeed, defendant's argument could just as easily cut the other way, as the next paragraph explains.

The similarity of the KBI and KHP statutes could suggest that the court should construe them together, harmonizing them so that they achieve the same outcomes for employees in comparable, high-level law enforcement positions.  *See Miller v. Bd. of Cnty. Comm'rs*, 390 P.3d 504, 511 (Kan. 2017) ("[S]tatutes dealing with the same subject—those that are in pari materia—should be interpreted harmoniously when possible.").  This harmonizing approach would bolster plaintiff's claim, not undermine it, as defendant claims.  That's so because the Kansas Supreme Court already has interpreted the KHP statute to require return of certain unclassified employees to a previous position upon termination.  *Bruce*, 514 P.3d at 1027 ("K.S.A. 74-2113(a) requires KHP superintendents, assistant superintendents, and majors be 'returned' to the position and classification status the employee had attained before being appointed[.]").  So, harmonizing the statutes, the court predicts the Kansas courts would interpret the KBI statute to provide similar return-to-position protections—just as plaintiff contends.  *See* Doc. 12 at 8 (urging court to construe KBI statute in harmony with KHP statute to allow high-level employee to return to

employment with agency upon termination).  And so, defendant's similar-and-thus-comparable argument stands his argument on its head.

IV.     Conclusion

The court remains unconvinced that the legislature's use of "expiration"—instead of "termination"—in § 75-711(c) obviates plaintiff's entitlement to another KBI position. Defendant's Motion to Dismiss (Doc. 6) thus fails.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Tony Mattivi's Motion to Dismiss Plaintiff's Complaint (Doc. 6) is denied.

**IT IS SO ORDERED.**

**Dated this 8th day of September, 2025, at Kansas City, Kansas.**

                                      **s/ Daniel D. Crabtree**
                                      **Daniel D. Crabtree**
                                      **United States District Judge**