IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID S. HUTCHINGS,

                  **Plaintiff**,

v.

TONY MATTIVI,

                  **Defendant**.

Case No. 24-4080-DDC

**MEMORANDUM AND ORDER**

Plaintiff David S. Hutchings began working as associate director of the Kansas Bureau of Investigation (KBI) in September 2011. About 12 years later, in June 2023, the director of the KBI—defendant Tony Mattivi—informed plaintiff he wanted plaintiff to step down. Plaintiff asked defendant about assuming another position at the KBI. Defendant replied that he'd prefer for plaintiff to leave the agency altogether. Plaintiff's employment with the KBI ended several weeks later. The question before the court is whether plaintiff owned a protected property interest in his continued employment with the KBI.[1]

Plaintiff's claims rise and fall on this property-interest question. Plaintiff asserts that defendant—in both his official and individual capacity—violated plaintiff's constitutional due process rights under the Fourteenth Amendment. And, he asserts, defendant tortiously interfered

---

[1] This introductory paragraph recites part of the so-called summary judgment facts. This version of the facts consists of the facts established at summary judgment as undisputed, viewed in plaintiff's favor since he's the non-movant, and gives him the benefit of all reasonable inferences those facts will support. The court has no way to know whether this version of the facts reflects the facts that a reasonable factfinder would find at a trial.

with plaintiff's prospective business relationship with the KBI, violating the Kansas Tort Claims Act and Kansas common law. But, if plaintiff didn't possess a protected property interest in his continued employment with the KBI, all these claims fail. Predictably, defendant takes just this position.

In his Motion for Summary Judgment (Doc. 45), defendant contends that plaintiff had no protected property interest in his continued employment with the KBI. Defendant argues that plaintiff—as assistant director—occupied an unclassified position that defendant could terminate at-will. Plaintiff agrees that his position was unclassified. But he contends that the Kansas KBI statute (Kan. Stat. Ann. § 75-711) provides right-to-return employment protection for some unclassified KBI employees, thus creating a protected property interest. Plaintiff is right. The Kansas Supreme Court has interpreted a similar statute as providing right-to-return protection to upper-level employees of the Kansas Highway Patrol (KHP). Following the Kansas Supreme Court's reasoning, this court concludes that the Kansas KBI statute likewise provided plaintiff with a right to return to KBI employment, thus creating a protected property interest. So, the court denies defendant's Motion for Summary Judgment (Doc. 45). The court explains its conclusion more fully, below, but first it outlines the summary judgment facts.

I.      **Background**

As outlined in footnote 1, the following facts are stipulated, uncontroverted, or, where controverted, are stated in the light most favorable to plaintiff, the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### *Plaintiff's Employment*

The KBI hired plaintiff in November 1990 to serve as a special agent I. Doc. 44 at 2 (PTO Stipulations ¶ 2.a.vi.). In February 2008, the KBI promoted plaintiff to special agent in charge. *Id.* (PTO Stipulations ¶ 2.a.vii.). All KBI agents and employees are in the classified

service under the Kansas Civil Service Act (KCSA), except for those in certain upper-level positions.  *Id.* (PTO Stipulations ¶ 2.a.v.); *see also* Kan. Stat. Ann. § 75-711(b) (placing all employees other than excepted ones under KCSA classified service).  So, after completing a probationary period, plaintiff qualified as a permanent classified employee when he served as special agent I and special agent in charge.  Doc. 44 at 2 (PTO Stipulations ¶ 2.a.vi.–vii.).  Permanent classified employees enjoy various "procedural and substantive protections when an appointing authority takes adverse employment action against them[,]" including "valid cause" to "dismiss, demote, or suspend" them.  *Bruce v. Kelly*, 514 P.3d 1007, 1013 (Kan. 2022).

In September 2011, the KBI again promoted plaintiff, this time to associate director.  Doc. 44 at 3 (PTO Stipulations ¶ 2.a.viii.).  Kansas law specifies that the KBI associate director position—one of those upper-level KBI positions—is within the unclassified service.  *See* § 75-711(b).  And so, as associate director of the KBI, plaintiff served as an unclassified employee.  Doc. 44 at 3 (PTO Stipulations ¶ 2.a.viii.).

### *Terminating Plaintiff's Employment*

In February 2023, the Kansas Senate confirmed defendant as the director of the KBI.  *Id.* (PTO Stipulations ¶ 2.a.x.).  About four months later, on June 23, 2023, defendant met with plaintiff and stated that he wanted plaintiff to step down as associate director.  *Id.* (PTO Stipulations ¶ 2.a.xi.).  Defendant intended to appoint a new associate director, Robert Jacobs.  *Id.* (PTO Stipulations ¶ 2.a.xii.).  Plaintiff asked defendant if he had another position within the KBI for plaintiff.  *Id.* (PTO Stipulations ¶ 2.a.xi.).  Defendant replied that he'd prefer for plaintiff to leave the agency.  *Id.*

### *Follow-Up Email and Meeting*

Ten days later, plaintiff sent defendant an email emphasizing that it was "not [his] choice to leave employment with the KBI."  *Id.* (PTO Stipulations ¶ 2.a.xiii.).  The email quoted the

3

Kansas statute governing the KBI, § 75-711. *Id.* (PTO Stipulations ¶ 2.a.xiv.). In relevant part, this statute provides that "[a]ny person who was a member of the bureau at the time of appointment as . . . associate director . . . upon the expiration of their appointment, shall be returned to an unclassified or regular classified position under the Kansas civil service act[.]" Kan. Stat. Ann. § 75-711(c). The email concluded with the following statement:

> I would like to discuss options with you, particularly as you have said that it is your preference that I leave the KBI and it would clearly be difficult to work in an environment where I am not wanted. I would be happy to meet without representation if you believe it can be productive.

Doc. 44 at 3 (PTO Stipulations ¶ 2.a.xiv.).

On July 5, 2023, plaintiff and defendant met again. *Id.* at 4 (PTO Stipulations ¶ 2.a.xv.). At the meeting, defendant told plaintiff that he was placing plaintiff on immediate administrative leave. *Id.* And he explained that the KBI would give plaintiff a ride home. *Id.* Plaintiff's administrative leave concluded on July 31, 2023. *Id.* (PTO Stipulations ¶ 2.a.xvi.). On that same day, plaintiff's employment with the KBI ceased. *Id.*

### *Plaintiff's Suit*

Plaintiff then filed suit, alleging that defendant had deprived plaintiff of his property interest in continued employment with the KBI without adequate due process. *Id.* at 8 (PTO ¶ 4.a.i.). Those actions, plaintiff asserts, violated his constitutional due process rights under the Fourteenth Amendment. *Id.* Plaintiff brings the same due process claim against defendant in both his official and individual capacity. *Id.* (PTO ¶ 4.a.i.–ii.). Plaintiff also asserts a tortious interference with business relations claim against defendant. *Id.* (PTO ¶ 4.a.iii.). He alleges that terminating him "without affording him a hearing before the Kansas Civil Service Board" violated the Kansas Tort Claims Act and Kansas common law. *Id.*

In his summary judgment motion, defendant argues that plaintiff didn't have a protected property interest in his continued employment with the KBI. Doc. 46 at 9. And he asserts that plaintiff bases all of his claims on this property interest and right to remain a KBI employee. *Id.* The summary judgment outcome thus turns on the question of plaintiff's protected property interest.

## II.     Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard dictates that the court "view the evidence and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). Even if the non-moving party fails to respond

adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.     Analysis

Defendant contends that plaintiff "has no protected property interest in continued employment with the KBI to support his claims under 42 U.S.C. § 1983 and common law." Doc. 46 at 9. Absent a protected property interest or prospective business expectancy with the KBI, all plaintiff's claims fail, defendant asserts. *Id.*

A procedural due process violation requires a two-step inquiry: (1) "whether the plaintiff had a constitutionally protected interest[,]" and (2) "whether the process afforded was adequate to protect that interest." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 (10th Cir. 2013). "The existence of a property interest is . . . a question of law, not one of fact." *Tompkins v. U.S. Dep't of Veterans Affs.*, 16 F.4th 733, 739 n.7 (10th Cir. 2021). "Property interests are not created by the constitution but rather are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (quotation cleaned up). "A public employee has a property interest in his continued employment where 'state or local law creates a sufficient expectancy of continued employment.'" *McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (quoting *Driggins v. City of Okla. City*, 954 F.2d 1511, 1513 (10th Cir. 1992)). That is, "[s]tate law determines whether a claim of entitlement to employment is sufficient." *Id.*

Here, the state law informing plaintiff's property interest in continued employment is the Kansas KBI statute. It provides, in relevant part, that any "person who was a member of the bureau at the time of appointment as . . . associate director . . . upon the expiration of their appointment, shall be returned to an unclassified or regular classified position under the Kansas civil service act[.]" § 75-711(c). When the court is "called upon to interpret state law, [the court] must look to the rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (quotation cleaned up).

Most of defendant's summary judgment motion hinges on the statute's use of the word "expiration." Doc. 46 at 9. He theorizes that the right-to-return protection afforded by § 75-711(c) applies solely when an unclassified employee's term expires, not when the KBI

terminates his employment. *Id.* And here, the KBI terminated plaintiff's employment. *Id.* So, defendant reasons, plaintiff "was not entitled to remain an employee of the KBI." *Id.*

To one familiar with the docket in this case, defendant's argument evokes a sense of déjà vu. Defendant propounded—and the court rejected—this same expiration-vs-termination argument at the motion-to-dismiss stage. *See* Doc. 54. The court finds no reason to repeat its analysis on decided issues. The court thus briefly recaps its earlier conclusions, below. The remainder of the current Order then focuses on those few, untested arguments challenging plaintiff's protected interest—ones that defendant submits for the first time at summary judgment.

### A. Expiration-vs-Termination Theory

Ruling defendant's Motion to Dismiss (Doc. 6), the court concluded that terminating a KBI associate director triggers § 75-711(c)'s right-to-return employment protection. *Id.* at 1. It reached this conclusion by starting with the plain language of the statute, as Kansas law requires. *Id.* at 9 (quoting *Bruce*, 514 P.3d at 1012). Consulting dictionary definitions of "expiration" and "termination," the court determined that the word "expiration" can encompass "termination"— and vice-versa. *Id.* at 9–11. So, defendant's effort to distinguish the terms—and thereby escape the statutorily prescribed right-to-return protection—failed. *Id.* at 11. The court hasn't changed its mind.

Still, defendant presses the expiration-vs-termination distinction at summary judgment— in part—to avoid the Kansas Supreme Court decision in *Bruce v. Kelly*, 514 P.3d 1007. *Bruce* addressed a Kansas statute that bestows similar right-to-return employment protection on upper-level KHP employees. *See id.*; Kan. Stat. Ann. § 74-2113(a)(2) (providing that a person appointed to specified upper-level KHP positions "shall be returned to a rank with permanent status" "upon termination of the term" in the position). The KHP statute utilizes the word

"termination" to trigger the right-to-return protection. § 74-2113(a)(2). But the KBI statute at issue here utilizes the word "expiration." § 75-711(c). Invoking this divergent language, defendant argues that the *Bruce* case and this one differ—and in a way that matters. Doc. 46 at 14. Again, the court's earlier Order already addressed this expiration-vs-termination argument. *See* Doc. 54 at 11–14. It concluded that the disparate terms—when used in separate statutes instead of within the same statutory scheme—don't indicate a deliberate legislative choice to create meaningfully different right-to-return protections. *Id.*

Realizing the court didn't buy his expiration-vs-termination theory, defendant identified two other "critical" differences that purportedly preclude *Bruce*'s application here in his Reply.[2] Doc. 58 at 5–6. Defendant's efforts to avoid *Bruce* are prudent ones. The Kansas Supreme Court holding in *Bruce*, if properly transferred to the present case, largely decides defendant's summary judgment motion—and not in his favor. The court explains next what the Kansas Supreme Court decided in *Bruce* and why it occupies center stage here. Then, the court addresses the two "critical" differences that, in defendant's judgment, distinguish *Bruce* and the present case—and concludes they don't carry the day.

    **B.**    ***Bruce v. Kelly***

        **1.**    ***Bruce*'s Holdings**

Mark A. Bruce had worked as KHP superintendent for about four years when defendants—the governor, the governor's chief of staff, and the new KHP superintendent—allegedly forced him to resign. *Bruce*, 514 P.3d at 1009. Bruce filed a federal civil lawsuit,

---

[2] The court issued its Memorandum and Order denying defendant's Motion to Dismiss (Doc. 6) *after* defendant moved for summary judgment but *before* defendant filed his summary judgment Reply. *See* Doc. 45 (showing Motion for Summary Judgment filed on July 29, 2025); Doc. 54 (showing motion-to-dismiss Order issued on Sept. 8, 2025); Doc. 58 (showing summary judgment Reply filed Sept. 22, 2025).

9

claiming that defendants had violated his due process rights and tortiously interfered with his business relationship with the KHP. *Id.* He argued that the Kansas KHP statute, § 74-2113, required defendants to return him to the rank he had held before his appointment to superintendent rather than terminate his employment. *Bruce*, 514 P.3d at 1009. The Kansas Supreme Court weighed in, answering two questions certified by our court: *First*, is the rank of major classified or unclassified? And, *second*, would a return to previous rank involve serving another probationary period? *Id.* at 1010. These certified questions required the Kansas Supreme Court to grapple with the KHP statute's right-to-return provision. And some of that court's grappling proves instrumental to interpreting the right-to-return provision in the KBI statute at issue here. Start with a primer on the Kansas Supreme Court's key conclusions in *Bruce*.

*First*, *Bruce* discussed the distinction between classified and unclassified service under the KCSA. *Id.* at 1013–14. This discussion emphasized that the KCSA—Kansas Civil Service Act—provides a property interest in continued employment for classified employees. But it doesn't provide a property interest for unclassified employees because their appointing authority may terminate them at-will. *Id.* at 1014. *Later*, the Kansas Supreme Court clarified that the KHP statute provides distinct employment protections, over and above those protections provided by the KCSA. *Id.* at 1023. It differentiated the employment protections this way: The KCSA, for its part, prohibits an appointing authority from dismissing, demoting, or suspending "a permanent classified employee without legitimate cause." *Id.* But the KCSA doesn't "*compel* an appointing authority to return that employee to his or her former position in the classified service." *Id.* at 1024 (emphasis in original). The KHP statute, on the other hand, provides "this very employment protection"—a right to return to classified service "when an employee's term

in the unclassified service is terminated." *Id.* The KHP statute thus doesn't offer "redundant employment protections—protections permanent classified employees already possessed under the KCSA"—instead, it adds to them. *Id.* at 1023. The Kansas Supreme Court thereby delineated the employment protections afforded by the KCSA vis-à-vis the KHP statute in ways that prove instructive—even dispositive—in this lawsuit.

Defendant disagrees. He argues that this case "require[s] that the Court apply a different analysis" here than it did in *Bruce*. Doc. 58 at 4. He contends that the differences between the controlling KHP and KBI statutes "are tangible, meaningful, and significant[.]" *Id.* Striving to create distance between *Bruce* and the claims at issue here, defendant identifies three "critical" differences. The court already addressed one of them: the termination-vs-expiration distinction. Defendant presents two more purportedly "critical" differences. The court discusses both of them, below. Neither persuades this court that the right-to-return protections provided by the KHP and KBI statutes differ meaningfully.

### 2. Defendant's First "Critical" Difference

Defendant first argues that the KHP right-to-return provision applies both to unclassified and classified employees, but the KBI right-to-return provision applies just to unclassified employees. *Id.* at 5–6. That's correct.[3] But defendant never explains why this difference matters. And the court can't see why it would. On the contrary, this distinction stands defendant's argument on its head: that the KHP statute applies to both classified and unclassified employees suggests that the Kansas Supreme Court doesn't couple the right-to-

---

[3] As defendant acknowledges, this statement's no longer correct. Effective July 2025, the Kansas legislature amended the KHP statute to clarify that majors in the KHP are unclassified employees. Doc. 58 at 5 n. 1; *see also* Kan. Stat. Ann. § 74-2113(a)(2) ("The superintendent, assistant superintendent, and majors shall be within the unclassified service under the Kansas civil service act."). With this amendment, the KHP right-to-return protection applies only to unclassified employees—just like the KBI right-to-return protection.

11

return protection with class. And if the Kansas courts don't recognize such coupling, then whether a right-to-return provision applies to one class or both classes of employees wouldn't matter for its interpretation. A brief overview of how the KHP statute came to apply to both unclassified and classified employees—and why—helps illustrate the court's point.

The Kansas Supreme Court held that a major in the KHP occupies a classified position, *Bruce*, 514 P.3d at 1017. The upshot of this holding was that classified majors, under the KHP statute, had the same right-to-return protection as unclassified superintendents and assistant superintendents. *Bruce*, 514 P.3d at 1020. That may seem odd. After all, the KCSA already protects classified employees. So why would the KHP statute provide protection to classified majors? The Kansas Supreme Court took pains to explain how this oddity arose—through the 2018 amendments.[4] *Id.* And then the Kansas Supreme Court explained that, even though providing right-to-return protections for a classified major may seem redundant, it isn't. *Id.* at 1023. That's so because the right-to-return protection is additive to—not in place of—KCSA protections for classified employees. *Id.* Specifically, the KCSA affords "a permanent classified employee" protection from dismissal, demotion, or suspension by an appointing authority "without legitimate cause." *Id.* But the right-to-return protection "*compel*[s] an appointing authority to return that employee to his or her former position in the classified service." *Id.* at 1024 (emphasis in original). So, the right-to-return protection isn't redundant—it's additive. It benefits classified employees—just as it does unclassified employees—even though classified

---

[4] The Kansas legislature amended § 74-2113 in 2018. *Bruce*, 514 P.3d at 1020. Before the amendment, the right-to-return protection in the KHP statute applied to superintendents and assistant superintendents, positions which the statute specifically identified as unclassified. *Id.* The amendment added majors to the list of personnel holding right-to-return protections. *Id.* But the 2018 amendments didn't add majors to the list of unclassified positions. *Id.* In other words, the amendments added major to the list in one part of the statute, but not in the other. *Id.* So, as it turned out, the KHP statute's right-to-return protection applied both to those within the unclassified service—superintendents and assistant superintendents—as well as to majors, who still were in the classified service. *Id.*

employees already enjoy other employment protections.  In reaching that conclusion, the Kansas Supreme Court decoupled the right-to-return protection from class of employment.  And this decoupling undermines defendant's argument here.

If the KHP statute's right-to-return protection isn't tethered to the classified/unclassified distinction, it is of no moment that the KHP statute and the KBI statute differ when it comes to class of employment.  The Kansas Supreme Court's interpretation of the right-to-return protection didn't turn on class.  Instead, the Kansas Supreme Court took great effort to explain that class was irrelevant to the protection—*i.e.*, that both classes stood to benefit from it.  So, the court's hard-pressed now to see how defendant's so-called "critical" difference supplies a meaningful basis to distinguish *Bruce*.  In short, defendant doesn't convince the court that it should diverge from the Kansas Supreme Court's interpretation of the right-to-return provision in *Bruce*.

### 3. Defendant's Second "Critical" Difference

Defendant's other argument contends that a second "critical" difference precludes applying *Bruce*'s reasoning to this case: "the KHP statute requires the removed official to be returned to a fairly specific position" but the KBI statute "allows the removed official be returned to a non-specific position within a broader range of positions."  Doc. 58 at 6.  To evaluate this ostensible difference, the court compares the statutory language.  The KHP statute requires an employee's return "to a rank with permanent status not lower than the rank the person held when appointed[.]"  § 74-2113(a)(2).  The KBI statute requires an employee's return "to an unclassified or regular classified position under the Kansas civil service act with compensation comparable to and not lower than compensation being received at the time of appointment[.]"  § 75-711(c).  Given the purported difference in returned-to positions, defendant

13

contends that the two statutes "cannot reasonably be read to require exactly the same result." Doc. 58 at 6.

But defendant again fails to explain why this difference matters. Even if the two statutes dictate somewhat disparate circumstances upon an employee's return, both prescribe a return to employment instead of terminating employment. And the return—not the position after return—is the dispositive issue here. Recall that defendant identified the fulcrum of his summary judgment motion as whether plaintiff possessed a protected property interest in returning to his employment with the KBI. Doc. 46 at 8 (identifying this question as sole question presented at summary judgment). Any distinction between the KHP and KBI statute about an employee's destination upon return doesn't erode the statutes' pivotal similarity: both require a return to employment instead of termination of employment. And it's that right to return which supplies the property interest needed to support a plaintiff's due process and tortious interference claims. *See Bruce v. Kelly*, No. 20-4077-DDC, 2024 WL 3400240, at *5 (D. Kan. July 12, 2024) (explaining that plaintiff's property interest in his job "turn[ed] on whether Governor Kelly terminated plaintiff's employment" or, instead, whether he "voluntarily relinquish[ed that] property interest" (quotation cleaned up)); *see also id.* at *7 (concluding that termination as KHP superintendent "entitled plaintiff to return" and, because advisory jury found Governor Kelly terminated his employment without any due process, plaintiff prevailed on his procedural due process claim).

In sum, defendant's arguments—trying to distinguish meaningfully *Bruce* and the KHP statute on one hand from this case and the KBI statute on the other—fall flat. Without a reason to distinguish between the two, the court looks to *Bruce* to interpret Kansas law. Applying *Bruce*'s reasoning, the KBI statute's right-to-return provision "*compel*[s] an appointing authority

to return [an appointed] employee" to employment—instead of terminating his employment altogether. 514 P.3d at 1024. And so, defendant's motion for summary judgment—premised on an absence of a protected property interest—fails. Anticipating this result, defendant advances one last argument—hoping to limit plaintiff's recovery. The court addresses it, next.

### C.      Return and Compensation

Finally, defendant's motion contends that plaintiff, even if he is entitled to return to employment, is "not entitled to return back to his position as Special Agent in Charge [SAC], as he requests, and he is not entitled to the compensation he seeks." Doc. 46 at 10. Instead, defendant argues, plaintiff "is only entitled to receive, at minimum, some unclassified or classified position under KCSA with compensation and benefits equal to Plaintiff's position as SAC." *Id.* at 22. He's not even guaranteed a position in the KBI, defendant asserts. *Id.*

As a refresher, here's the pertinent statutory language providing right-to-return protection to KBI associate directors:

> Any person who was a member of the bureau at the time of appointment as . . . associate director . . . upon the expiration of their appointment, shall be returned to an unclassified or regular classified position under the Kansas civil service act with compensation comparable to and not lower than compensation being received at the time of appointment to the unclassified service. If all such possible positions are filled at that time, a temporary additional position shall be created for the person until a vacancy exists in the position.

§ 75-711(c). Defendant urges the court to focus on this provision's use of the article "an" before the phrase "unclassified or regular classified position"—as opposed to the article "the." This suggests that the statutory language doesn't compel plaintiff's return to precisely the same KBI position. *Id.* at 23–24. Plaintiff, in response, implores the court to concentrate on the word "returned." Doc. 53 at 11–12. And plaintiff directs the court to the Kansas Supreme Court's interpretation of "returned" in the parallel right-to-return provision in *Bruce*. *Id.* Plaintiff again has the better of the argument.

In *Bruce*, the Kansas Supreme Court emphasized that no statute or administrative regulation defines the word "returned." 514 P.3d at 1027. So, it construed "returned" according to its context. *Id.* The KHP statutory context reads as follows: "If a person appointed as superintendent . . . is a member of the patrol when appointed, the person in each case, upon termination of the term as superintendent . . . shall be returned to a rank with permanent status not lower than the rank the person held when appointed[.]" § 74-2113(a)(2). And the Kansas Supreme Court gave the word "returned"—a word in common use—its ordinary meaning. *Bruce*, 514 P.3d at 1027. *Bruce* defined "return" ordinarily to mean "'to go back to where one was.'" *Id.* (first citing *Webster's New World College Dictionary* 1242 (5th ed. 2016); and then citing *Merriam-Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/return). *Bruce* concluded, therefore, that return's ordinary meaning in the KHP right-to-return provision "suggests eligible KHP members must revert to the very position and classification status they held before being appointed[.]" *Id.* Later, *Bruce* determined that a complementary provision—the one that compels the agency to create a new, temporary position if no current vacancy exists—likewise "contemplates a continuing employment relationship between the eligible KHP employee and the agency." *Id.* at 1029.

Here, the KBI statute employs the word "returned" in a strikingly similar statutory context. *See* § 75-711(c) ("Any person who was a member of the bureau at the time of appointment as . . . associate director . . . upon the expiration of their appointment, shall be returned to an unclassified or regular classified position[.]"). And it, too, compels the agency to create "a temporary additional position" until "a vacancy exists[,]" when necessary. *Id.* Applying *Bruce*'s reasoning, the court interprets the KBI statute to "contemplate[] a continuing employment relationship between" plaintiff and the KBI and to "suggest[]" that plaintiff "must

16

revert to the very position and classification status" he held before his role as associate director. 514 P.3d at 1027, 1029. And so, the court rejects defendant's attempt to limit plaintiff's recovery. Before reciting its conclusions, the court ties up one final loose end.

### D. New Arguments on Reply

In his Reply, defendant includes one last-ditch effort to get a leg up at the summary judgment stage. For the first time, defendant argues that plaintiff can't satisfy the elements of his tortious interference claim for two new reasons: *First*, defendant contends, plaintiff can't establish any intentional misconduct by defendant. Doc. 58 at 8. *Second*, defendant asserts, plaintiff can't establish that he was reasonably certain to have continued his employment with the KBI. *Id.* at 9. But these are entirely new arguments. And "arguments raised for the first time in a reply brief are generally deemed waived." *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).

Defendant's opening brief never uses the word "misconduct" or the phrase "reasonably certain"—not at all. And without them, one hardly could make these arguments. *See generally* Doc. 46. Indeed, the brief only mentions "tortious interference" three times: twice when listing the claims plaintiff asserted, *id.* at 1–2, and once to argue that a tortious interference claim—like plaintiff's due process claim—requires a property interest, *id.* at 9. Thus, no arguments akin to those presented in his Reply surface in defendant's motion or supporting memorandum. Nor does defendant assert these new arguments because plaintiff opened the door for them in his Response. *See Carter v. Spirit AeroSystems, Inc.*, No. 16-01350-EFM, 2019 WL 3732684, at *12 (D. Kan. Aug. 8, 2019) ("[A] reply which merely responds to matters placed in issue by the response and does not spring upon the opposing party new reasons for the entry of summary judgment is entirely proper." (quotation cleaned up)), *aff'd*, 827 F. App'x 864 (10th Cir. 2020).

17

Like defendant, plaintiff never used the word "misconduct" or the phrase "reasonably certain" in his opening papers. *See generally* Doc. 53. And plaintiff refers to "tortiously interfere[ing]" just once, when listing his claims. *Id.* at 1. Indeed, until the last three pages of defendant's Reply brief, the parties hadn't even attempted to differentiate the due process and tortious interference claims, instead throwing them all in the same protected-property-interest bucket. The "court does not consider arguments raised for the first time in a reply brief." *United States v. Roe*, 913 F.3d 1285, 1299 n.18 (10th Cir. 2019) (quotation cleaned up); *see also Iowa Credit Union League v. Nat'l Credit Union Admin. Bd.*, No. 23-2255-EFM, 2023 WL 6541324, at *1 (D. Kan. Oct. 6, 2023) (same); *Eucalyptus Real Est., LLC v. Innovative Work Comp Sols., LLC*, 642 F. Supp. 3d 1273, 1281 (D. Kan. 2022) (same); *H&C Animal Health, LLC v. Ceva Animal Health, LLC*, 499 F. Supp. 3d 920, 935 (D. Kan. 2020) (same). And the court won't do so here.

## IV.     Conclusion

Despite defendant's arguments to the contrary, the court sees no reason to distinguish the case at hand from *Bruce*. Although defendant identifies several distinctions, all of them are distinctions without differences. And when the court applies *Bruce*'s reasoning, defendant's summary judgment arguments fail. The court thus denies defendant's motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Tony Mattivi's Motion for Summary Judgment (Doc. 45) is denied.

**IT IS SO ORDERED.**

**Dated this 21st day of January, 2026, at Kansas City, Kansas.**

                                          s/ Daniel D. Crabtree
                                          Daniel D. Crabtree
                                          United States District Judge