**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DAVID S. HUTCHINGS,

Plaintiff,

v.                                                                    Case No. 24-4080-WPJ

TONY MATTIVI,
Director of the Kansas
Bureau of Investigation,
In His Individual And Official Capacities,

Defendant(s).

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR NEW TRIAL**

THIS MATTER comes before the Court upon Plaintiff's Motion for a New Trial **[Doc. 101]**
and Memorandum in Support **[Doc. 101-1]**, Defendant's Response **[Doc. 102],** and Plaintiff's
Reply **[Doc. 103]**. From May 18 to May 20, 2026, trial proceeded on Plaintiff David S. Hutchings'
claims against Defendant Tony Mattivi that Plaintiff's due process rights had been violated when
he was allegedly terminated from his position as Associate Director of the Kansas Bureau of
Investigation (KBI). On May 20, a petit jury returned a unanimous verdict that Plaintiff David
Hutchings voluntarily resigned from his position, and thus, his due process rights were not violated
by the Defendant. **Docs. 99, 100.**

In advance of trial, Plaintiff filed an omnibus objection to 22 of 28 exhibits disclosed by
Defendant on the grounds of irrelevance or "because their probative value is substantially
outweighed by a danger of unfair prejudice or misleading the jury." **Doc. 77 at 1;** *see* Fed. R.

1

Evid. 403. Plaintiff declined to file any motions in limine[1] specifying in detail how the probative value of the exhibits in question were outweighed by the danger of unfair prejudice or how the exhibits would be misleading to the jury. Instead, Plaintiff elected to reserve his particularized objections for trial when the exhibits were offered for admission. Plaintiff now asks the Court to grant him a new trial pursuant to Fed. R. Civ. P. 59(a)(1)(A) because, he argues, certain evidence admitted at trial should have been excluded under Fed. R. Evid. 403. **Doc. 101-1 at 1**. Defendant opposes. **Doc. 102**. Upon thorough review of the pleadings and the record, the Court **DENIES** the Motion for a New Trial.

## BACKGROUND

Trial centered on the conclusion of Plaintiff Hutchings' appointment as Associate Director of the Kansas Bureau of Investigation (KBI) in July 2023. Plaintiff worked at the KBI beginning in 1990, was promoted to Special Agent in Charge in 2006, and elevated to the position of Associate Director in 2011. Plaintiff alleged that Defendant Mattivi, who was appointed to the position of Director in February 2023, asked Plaintiff to step down so Defendant could appoint a new Associate Director. According to Plaintiff, he then inquired about obtaining another position within the KBI but Defendant stated that he preferred Plaintiff leave the agency. Although Plaintiff conceded the Associate Director of the KBI serves at the pleasure of the Director, Plaintiff argued

---

[1] On March 6, 2026, the Chief Judge of the Tenth Circuit designated the undersigned judge to preside over the above captioned case as a result of the blanket recusal of all the District Judges in the District of Kansas. At the initial status/scheduling conference conducted by video conferencing technology on March 17, 2026 regarding a new trial date, the Court inquired whether Plaintiff's counsel intended to file any motions in limine. Plaintiff's counsel stated that no motions in limine would be filed, and objections to exhibits would be raised at trial. While there is no requirement that Plaintiff's counsel file motion(s) in limine, the Court asked the question about the potential filing of such motions because the pretrial stage, prior to jury selection, is when lawyers frequently attempt to obtain a pretrial ruling from the trial judge excluding or limiting the jury from seeing or hearing so-called prejudicial evidence offered by the opposing party. While there's no guarantee a trial judge will rule on the admissibility of evidence argued in a motion in limine at the pretrial stage, to the extent lawyers wish to argue unfair prejudice under Rule 403, a pretrial hearing allows for more extensive written and oral argument by counsel and questioning by the trial judge in contrast to the situation where during a jury trial, counsel make 403 objections that are taken up at a bench conference or when the jury is excused from the courtroom.

that Defendant unlawfully terminated not only Plaintiff's appointment as Associate Director but also his employment with the agency altogether in violation of his right to due process under the Kansas Civil Service Act, K.S.A. § 75-711(c).  **See Compl., Doc. 1 (Counts I and II).** [2]  Plaintiff argued that upon his removal, he was entitled to return to a permanent classified position — either as Special Agent in Charge or a comparable position in the classified service.  *See* **Doc. 93**, **at 1–2**.

At trial, outside the presence of the jury and over the objection of the Defendant, the Court ruled as a matter of law that § 75-711(c) entitles the appointee to return to a classified position when, as here, the appointing authority asks the appointee to leave the unclassified position.  **Tr. Vol. III at 92:20–93:21.**  But because the statutory protections are triggered only upon an involuntary dismissal from the position of Associate Director, *see* K.S.A. § 75-711(c), the threshold question for the jury was whether Plaintiff was terminated, or instead, whether he voluntarily resigned.  ***See* Doc. 98 at 9 (Instruction No. 8); Doc. 99 at 1.**  It was undisputed that the process required by § 75-711(c) had not been afforded, but that fact was ultimately inconsequential if the evidence showed that Plaintiff made the voluntary decision to resign.  The jury returned a verdict that the Plaintiff voluntarily resigned and was not terminated.  **Doc. 99**. From that determination followed the necessary conclusion that Plaintiff's due process rights were not violated.  In light of its unanimous conclusion on that predicate factual question, the jury did not proceed to consider the remaining questions on the verdict form.

Plaintiff Hutchings was the sole witness to testify in support of the Plaintiff's case in chief. Defense counsel raised no objections to Plaintiff's testimony, and, opted to question Plaintiff during cross-examination instead of presenting Plaintiff's testimony during Defendant's case.

---

[2] The complaint also included a claim for tortious interference, which was voluntarily dismissed prior to trial.  **See Doc. 81.**

3

Several current and former employees of the KBI and a psychologist who conducted an outside report on behalf of the KBI regarding Plaintiff, testified on behalf of the defense. Plaintiff's counsel raised several objections to the exhibits Defendant offered into evidence, including — as relevant to the instant Motion — on Rule 403 grounds. Those exhibits are discussed further below.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(a)(1)(A) permits the court to "grant a new trial on all or some of the issues—and to any party . . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . . " "Whether to grant a new trial is a decision committed to the informed discretion of the district court." *Tomson v. Stephan*, 705 F. Supp. 530, 533 (D. Kan. 1989). "Motions for new trial are disfavored . . . and granted only with great caution." *United States v. Mounkes*, 204 F.3d 1024, 1027–28 (10th Cir. 2000).

Under certain circumstances, a new trial may be warranted if the trial court abused its discretion in admitting or excluding evidence and the error affected the substantial rights of the parties. *See Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1149 (10th Cir. 1978). Because of its "first-hand ability to view the witness or evidence and assess credibility and probative value" the trial court is vested with "broad discretion in determining the admissibility of evidence." *McEwen v. City of Norman*, 926 F.2d 1539, 1545 (10th Cir. 1991); *see also United States v. Bautista*, 145 F.3d 1140, 1151 (10th Cir. 1998). Where counsel makes a contemporaneous objection to the evidence offered for admission, the trial court's decision is reviewed for abuse of discretion. *McEwen*, 926 F.2d at 1544. Where there is no contemporaneous objection, the standard of review is "plain error." *Id.* at 1545.

Even if evidence was erroneously admitted or excluded, such error does not warrant a new trial unless the movant demonstrates that the error was prejudicial. *Rasmussen Drilling, Inc*., 571

F.2d at 1148; *Tomson*, 705 F. Supp. at 533; *see also* Fed. R. Civ. P. 61 (instructing the court, "[u]nless justice requires otherwise" at all procedural stages, to "disregard all errors and defects that do not affect any party's substantial rights."). An error is prejudicial if it affects a party's substantial rights. *See United States v. Olano*, 507 U.S. 725, 735 (1993). An error affects a party's substantial rights if it "had a substantial influence" or "leaves one in grave doubt as to whether it had such an effect on the outcome." *Hill v. J.B. Hunt Transp., Inc.*, 815 F.3d 651, 659 (10th Cir. 2016) (quoting *McInnis v. Fairfield Cmtys Inc.*, 458 F.3d 1129, 1142 (10th Cir. 2006)). It is the moving party's burden to demonstrate prejudice. *See Tomson*, 705 F. Supp. at 533.

Evidence is relevant if it tends to make a fact more or less probable and the fact bears on an issue material to the action. *See* Fed. R. Evid. 401. Even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. It is axiomatic that evidence offered in support of the proponent's case or to rebut the opposing side's case will often be harmful, to some extent, to the opponent. Therefore, "[e]vidence is not unfairly prejudicial . . . 'simply because it is damaging to an opponent's case.'" *Therrien v. Target Corp.*, 617 F.3d 1242, 1255–56 (10th Cir. 2010) (quoting *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008)). "To be *unfairly* prejudicial, the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Caraway*, 534 F.3d at 1301 (emphasis in original).

## DISCUSSION

The Motion does not articulate with specificity which exhibits Plaintiff urges were erroneously admitted, instead referring to Plaintiff's omnibus pre-trial objection on relevance and Rule 403 grounds, which encompassed 22 exhibits, not all of which were ultimately offered into evidence. **See Docs. 77, 101-1 at 1–2.** Because Plaintiff does not identify the exhibits he contends

were erroneously admitted, meaningful review of his contention is difficult.  *See United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 (10th Cir. 1997) ("In the absence of essential references to the record in a party's brief, the court will not 'sift through' the record to find support for the claimant's arguments."); *Eacret v. Barnhart*, 120 F. App'x 264, 265–66 (10th Cir. 2005) (explaining that it is a "dangerous practice" for the court to "comb through the briefs and the record to ascertain" what the movant is arguing).  Nonetheless, the Court has independently reviewed the trial record and concludes that no evidentiary ruling warrants a new trial because Plaintiff has not shown error or that any error affected his substantial rights.

Plaintiff argues that the evidence in question was offered to show that "Defendant had good cause to terminate Plaintiff," an issue not presented to the jury.  **Doc. 101-1 at 2 (citing Doc. 44 at 9).**  Plaintiff also contends that the evidence was "offered to show that the plaintiff had created a toxic work environment as the Associate Director of the Kansas Bureau of Investigation."  ***Id.*** He maintains that, accordingly the evidence "was unfairly prejudicial . . . because [it] had an undue tendency to suggest a decision on an improper and emotional basis, namely, that the plaintiff had created a toxic work environment as the Associate Director."  ***Id.***

### I.    Exhibits Admitted Over Rule 403 Objection

At trial, Plaintiff's counsel objected to the admission of six exhibits on Rule 403 grounds.  **Tr.[3] Vol. II at 26:8–28:11; 126:9–130:14; 131:19-24; 132:1-15; 132:16–133:12**.  Those exhibits are numbered as follows:

- Exhibit 410 (*see* Tr. Vol. II at 26:8–28:12)

- Exhibit 415 (*see* Tr. Vol. I at 183:7-11; 207:21–211:8; Tr. Vol. II at 126:9–130:19)

- Exhibit 422 (*see* Tr. Vol. II at 131:19-24)

---

[3] The Court's citations to the transcript of trial refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

- Exhibit 423 (*see* Tr. Vol. I at 197:17–202:1; Vol. II, at 132:1–15)

- Exhibit 424 (*see* Tr. Vol. II at 132:16–133:12)

- Exhibit 429 (*see* Tr. Vol. II at 115:22–116:23)

The Court overruled the objections and admitted the exhibits into evidence for three independent yet sufficient reasons.  First, Plaintiff's claim for punitive damages invoked the Defendant's state of mind, rendering evidence relating to Defendant's mental state relevant.  *See Jolivet v. Deland*, 966 F.2d 573 (10th Cir. 1992) ("[P]unitive damages are to be awarded only when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'") (quoting *Smith v. Wade*, 461 U.S. 30, 35 (1983)); *see also* **Compl., Doc. 1, at 8–9**.  Second, the scope of Plaintiff's testimony on direct examination put the subject of these exhibits at issue, subjecting those topics to cross-examination.  ***See, e.g.*, Tr. Vol. I at 105:21-25; 107:1-19, 108:2-14** (direct-examination; Plaintiff discussing his working and social relationship with former deputy director Kyle Smith, including canoe trips the pair would attend); **135:16–136:11** (direct-examination; Plaintiff discussing his working relationship with Tony Weingartner, then-assistant director of the KBI)**; 141:19–142:5** (direct-examination; Plaintiff discussing the recording of other KBI employees, including Weingartner); *see United States v. Burch*, 153 F.3d 1140, 1144 (10th Cir. 1998) (quoting *United States v. Troutman*, 814 F.2d 1428, 1450 (10th Cir. 1987)) ("Cross examination may embrace any matter germane to the direct examination, qualifying or destroying, or tending to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness.").  Finally, to the extent evidence was otherwise inadmissible, Plaintiff opened the door to its introduction through his testimony.  *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005); *United States v. Regents of N.M. Sch. of Mines*, 185 F.2d 389, 391 (10th Cir. 1950).

Plaintiff argues that his claim for punitive damages relied solely on a theory of reckless indifference, not malice, and that accordingly, the jury had to decide only whether Defendant acted "in the face of a perceived risk that [his] actions will violate federal law." *See* **Doc. 101-1 at 2–3** (citing *Eisenhour v. Weber Cnty.*, 897 F. 3d 1272, 1281 (10th Cir. 2018)). Therefore, he contends the evidence was inapposite. *Id.* **at 3.** But even if the jury was not asked to decide whether Defendant acted with malice, Plaintiff nevertheless made Defendant's state of mind a central issue by seeking punitive damages. Once Plaintiff put Defendant's mental state at issue, Defendant was entitled to introduce evidence bearing on that subject. That there is a distinction between malice and reckless indifference does not render evidence bearing on Defendant's state of mind irrelevant. Both theories concern Defendant's culpability, and evidence relevant to Defendant's mental state remained probative of Plaintiff's punitive-damages claim.

On direct examination, Plaintiff discussed his relationship with Kyle Smith, former deputy director of the KBI, who Plaintiff described as the "number three" at the agency while Plaintiff was "number 2." *See* **Tr. Vol. I at 105:4–107:11.** Although Plaintiff tried to undercut his association with Smith, the evidence tended to suggest that Plaintiff and Smith had a close personal relationship. *Id.* **at 105:21-25; 184:4-12; Vol. II at 186:4–187:2**. The FBI undertook an investigation of Smith upon evidence that he had transmitted pornographic images of children to his secretary, and he was eventually prosecuted. **Tr. Vol. II at 179:14–20; 193:7–10.** However, testimony elicited at trial suggested that the investigation was obstructed because Smith's laptop was destroyed and that Plaintiff attempted to impede the KBI's response to the investigation due to his close relationship with Smith. **Tr. Vol. I at 183:17–186:11; Vol. II at 179:24–180:1; 180:10–181:9; 189:12–191:25; 192:5-8; 192:12–195:3.** Both parties were aware of the investigation (although Defendant would not be appointed Director until well after these events),

8

and on cross-examination, Plaintiff admitted responsibility for its handling and testified about Smith's eventual prosecution. **Tr. Vol. I at 186:2–11; Vol. II at 55:24–56:7; 59:25–60:5**. During a line of questioning on direct examination about his relationship with Smith, Plaintiff testified that he and Smith would do "things socially with groups of others" including attending the same canoe trips. **Tr. Vol. I at 107:1–11.** He also volunteered that Smith had described a female intern in crass terms and discussed sexual topics with her. ***Id.* at 106:6–16**.

Plaintiff objected to Defendant's Exhibit 415, an FBI 302 Report relating to the investigation of Smith. **Tr. Vol. I at 183:7-11; 207:21–211:8; Tr. Vol. II at 126:9–130:19.** Specifically, the report detailed the interview of Kristin Kelly, the former intern Plaintiff Hutchings discussed on direct and toward whom Smith made sexual advances. The report described Ms. Kelly's attendance on canoe trips with Plaintiff and his wife. ***See* Vol. I at 181:3–183:6.** On cross-examination, the defense questioned Plaintiff about his knowledge of Plaintiff's wife's relationship with Smith and Ms. Kelly. ***Id.* at 179:5–180:15.** The prior testimony, including Plaintiff's direct-examination testimony, therefore established that the report related to an investigation that Plaintiff was involved in and potentially aided in its obstruction.

The report was probative because it corroborated testimony regarding Plaintiff's relationship with Smith and Plaintiff's involvement in the KBI's response to the evidence leading to his investigation. It also provided context for the nature of Plaintiff's association with Smith by documenting Ms. Kelly's account, including her residence in a home rented by Plaintiff's wife and her interactions with Plaintiff and his family. **Tr. Vol. I at 179:25–180:2**. The report was also probative because Defendant's testimony indicated that the matters documented in the report factored into his thinking regarding Plaintiff's employment.[4] ***See* Tr. Vol. II at 88:18–2; 125:25–**

---

[4] The Court considered whether a limiting instruction would further mitigate any potential for unfair prejudice, explaining:

**126:5.**  Accordingly, the report provided context for Defendant's explanation of the employment decision and was also relevant to Plaintiff's claim for punitive damages.  Although the report contained allegations concerning Smith's misconduct, those matters had already been introduced through testimony.  **Tr. Vol. I at 179:5-22**.  The report's principal probative value was to corroborate that testimony and provide context for Plaintiff's relationship with Smith and his handling of the investigation.  The danger of unfair prejudice therefore did not substantially outweigh the exhibit's probative value.[5]

Plaintiff objected to Exhibit 410, a video recording made by Plaintiff of his meeting with Tony Weingartner, then-assistant director of the KBI at the time Defendant assumed the role of Director.  **Tr. Vol. II at 26:8–28:12**; **Vol. I at 19–25.**  The recording was probative because it documented Plaintiff's strained relationship with Weingartner, another high-level employee at the agency, a topic about which Plaintiff testified on direct and cross-examination.  **Tr. Vol. I at 132:20-25; Vol. II at 21:7–22:18**.  It also documented a workplace conflict that Defendant testified contributed to factionalism within the agency and informed Defendant's thinking regarding Plaintiff's employment with the KBI.  ***See* Tr. Vol. II at 78:12–19** (Defendant describing the recorded conversation as "the most petty and juvenile workplace exchange that I can remember seeing"); **80:1-11** (explaining that Defendant viewed the recording as a "breach of trust"); **81:19–82:5** (discussing Defendant's observation of "tribalism" within the KBI).  The recording therefore

---

> One option too . . . . in terms of some of this is if I do determine to admit it is to ask whether you want a limiting instruction on the specific purpose for which it's being admitted not that . . . some of this stuff actually happened but it also it's being admitted to show Mr. Mattivi's state of mind or offer it . . . to explain why he did what he did in terms of . . . actions.

**Tr. Vol. I at 211:1-7.**

Plaintiff did not request such an instruction.

[5] The Court directed the redaction of a portion of Exhibit 415 because it contained irrelevant and potentially inflammatory material.  **Tr. Vol. II at 129:10-15; 130:17–21**.

provided the jury with direct evidence of the interactions underlying Defendant's account of the events preceding Plaintiff's separation.  Its probative value was not outweighed by the danger of unfair prejudice.

Defendant's testimony demonstrated that Exhibits 423, 424, and 429 were documents that belonged to Defendant's predecessor Kirk Thompson and to which Defendant obtained access in hardcopy or through a server when he assumed the role of Director.  **Tr. Vol. II at 115:7–24; 132:1–10; 132:21–133:4.**  Plaintiff objected to Exhibit 429, a report prepared by Dr. Jennifer Prohaska, an outside consultant and clinical psychologist, aggregating and summarizing her findings from an evaluation of KBI employees' perceptions of Plaintiff.  *Id.* **at 116:14–23.**  Dr. Prohaska testified on behalf of the defense about her experience in the field of clinical psychology and about the preparation and contents of the report.  *Id.* **at 160:19–170:6.**  The report was probative because it documented Dr. Prohaska's contemporaneous assessment of Plaintiff and memorialized the evaluation Dr. Prohaska conducted and the information she considered in reaching her conclusions.  *See id.* **at 162:18–163:9**.  Moreover, Defendant testified that Dr. Prohaska's evaluation informed his assessment of Plaintiff's employment.  *See id.* **at 116:5–10.** To that end, to the extent the report documented Plaintiff's colleagues perceptions of him, it could likewise have informed Plaintiff's decision to voluntarily retire.  The report was also probative because Plaintiff testified about it at trial, explaining that he requested a meeting with former Director Thompson after receiving the report because he felt unsupported.  *Id.* **at 14:9–18.** Admission of the report therefore provided the jury with the context necessary to evaluate Plaintiff's account of those events.  In light of both parties' testimony and Dr. Prohaska's testimony regarding the preparation and contents of the report, its probative value was not substantially outweighed by the danger of unfair prejudice.

Plaintiff also objected to Exhibits 423 and 424, which contained Kirk Thompson's notes of his meetings with Plaintiff. **Tr. Vol. II at 132:1-15; 132:16–133:11.** Exhibit 423 concerned a December 3, 2021 meeting, at which Plaintiff testified he told Thompson he intended to retire and subsequently withdrew his notice at Thompson's request. **Tr. Vol. I at 199:22–200:4; 201:7-9.** Exhibit 423 was probative because the notes memorialized Plaintiff's previously expressed intent to retire, which bore directly on the central factual dispute of whether Plaintiff voluntarily resigned or was terminated. In light of its relevance to Plaintiff's employment and circumstances surrounding his separation, Exhibit 423's probative value was not substantially outweighed by the danger of unfair prejudice.

Plaintiff testified that he recognized Exhibit 424 as Thompson's notes regarding a meeting Plaintiff requested with him on July 28, 2022. **Tr. Vol. II at 15:10–16:6**. The notes recount that the meeting concerned Thompson's "level of support" for Plaintiff and that Plaintiff asked to change the comments in the CDS [Case Disposition Summary] files. Thompson wrote "(likely not) they are from a complete outsider but mirror Prohaska /+ staff remarks + comments." **Ex. 424 at 1**. The notes state Thompson told Plaintiff that Plaintiff was "not well supported among exec[utive] staff." *Id.* The notes were probative because they corroborated testimony regarding Plaintiff's reaction to the investigation into his working relationship with his colleagues and provided context for the ensuing interactions between Plaintiff and agency leadership. Plaintiff has not shown that their probative value was substantially outweighed by a danger of unfair prejudice.

Finally, Plaintiff objected on Rule 403 grounds to Exhibit 422, which contained a KBI "Case Disposition Summary" and Administrative Memorandum, each dated in May 2022, concerning an investigation conducted by outside counsel into allegations a KBI employee Special

Agent in Charge Doug Younger made about Plaintiff.  **Tr. Vol. II at 131:19-24**.  The testimony elicited on cross-examination of Plaintiff revealed that Younger and Plaintiff had a strained working relationship, and Plaintiff acknowledged the outside investigator's conclusions that those relational tensions interfered with Plaintiff's ability to perform his duties.  **Tr. Vol. II at 4:13-5:3; 6:20-23.**  The summary was, therefore, relevant to the nature of Plaintiff's working relationships with colleagues and the workplace dynamics that preceded the challenged employment decision. *See* **Tr. Vol. II at 4:1–5:4.**  It was also relevant insofar as it was included in the information Defendant had before him at the time of the challenged employment decision.  *See* **Tr. Vol. II at 131:16–18; Tr. Vol. II at 124:8–10** (indicating that "professional standards" documents are retained in a professional standards "case file").  Although the exhibit contained allegations reflecting negatively on Plaintiff, Plaintiff has not shown that any resulting risk of unfair prejudice substantially outweighed the exhibit's probative value, particularly given its relevance to the circumstances surrounding the conclusion of Plaintiff's employment.

## II.    Plaintiff's Reply Brief

In his reply brief, Plaintiff identifies for the first time the specific exhibits he challenges. **Doc. 103 at 1**.  In addition to the six exhibits described above, Plaintiff identifies exhibits 412 and 421 as "problematic," maintaining that they were among the exhibits included in Plaintiff's omnibus pre-trial general objection. *Id.*  As a general rule, courts in this District are reluctant to allow a party to raise new issues or arguments for the first time in a reply brief on the theory that the opponent does not have an opportunity to respond. *OMB Police Supply, Inc. v. Elbeco, Inc.*, No. CIV. A. 00–2518–KHV, 2001 WL 681575, at *3 (D. Kan. May 11, 2001); *Glad v. Thomas Cnty. Nat'l Bank*, No. 87-1299-C, 1990 WL 171068, at * (D. Kan. Oct. 10, 1990).  Nonetheless, even if the Court were to consider Plaintiff's untimely Rule 403 arguments, they would not change

13

its conclusion.  Plaintiff did not raise Rule 403 or relevance objections to exhibits 412 or 421 when those exhibits were introduced.  Moreover, even had Plaintiff preserved a Rule 403 objection, he has not demonstrated that the Court abused its discretion in admitting these exhibits or that their admission resulted in unfair prejudice.  Therefore, Plaintiff has not shown that the admission of either exhibit warrants a new trial.

### III.    Plaintiff Has Not Demonstrated Any Error Resulted in Unfair Prejudice

Having reviewed each of the challenged exhibits, the Court concludes that none was admitted in error under Rule 403.  Each exhibit was relevant to one or more issues presented at trial, and in each instance the exhibit's probative value was not substantially outweighed by the danger of unfair prejudice.  Moreover, even assuming arguendo that one or more exhibits should have been excluded, Plaintiff has not demonstrated that the admission of any exhibit affected his substantial rights or had a substantial influence on the jury's verdict.  A new trial is therefore unwarranted.

Plaintiff's Motion for a New Trial is DENIED.

SO ORDERED.

___/s/_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

14